JOHN J. POWERS (State Bar No. 145623)
RODNEY M. HUDSON (State Bar No. 189363)
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Facsimile: (415) 591-7510
E-mail: john.powers@dbr.com
E-mail: rodney.hudson@dbr.com

SIOBHAN A. CULLEN (State Bar. No. 179838)
DRINKER BIDDLE & REATH LLP
333 South Grand Avenue, Suite 1700
Los Angeles, CA 90071-1504
Telephone: (213) 253-2300
Facsimile: (213) 253-2314
E-mail: siobhan.cullen@dbr.com

Attorneys for Defendant
EVERFAST, INC.

FILED
08 JUL 29 PM 3:42
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NANCY FOGELSTROM, individually; on behalf of herself and all others similarly situated,

Plaintiff,

v.

EVERFAST, INC., a Delaware corporation; and DOES 1 through 50 inclusive,

Defendant.

Case No. '08 CV 1372 JLS (POR)

**EVERFAST, INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

TO THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that Defendant Everfast, Inc. ("Everfast"), pursuant to 28 U.S.C. §§ 1332(d), 1441 *et seq*, and 1446, *et seq*., removes this action to the United States District Court for the Southern District of California, and in support, respectfully submits the following:

## BACKGROUND

On June 27, 2008, plaintiff Nancy Fogelstrom filed an action in San Diego County Superior Court, entitled *Nancy Fogelstrom v. Everfast, Inc.*, Case No. 37-2008-00086675-CU-BT-CTL. The plaintiff purports to represent a statewide class consisting of all persons in California from whom Everfast allegedly requested and recorded personal identification information as part of a credit card transaction. Complaint at ¶ 10 (Exhibit A). Relying on the Song-Beverly Credit Card Act of 1971, Cal. Civ. Code 1747.08 ("Song Beverly Act"), the plaintiff seeks on behalf of herself and the putative class statutory penalties for each alleged violation, injunctive relief, fluid or *cy pres* recovery, and attorneys' fees and costs. *See* Prayer For Relief.

This matter is removable under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and 1453(b). Everfast has satisfied all necessary procedural requirements and therefore removes this action to the United States District Court for the Southern District of California.

## CAFA'S REMOVAL REQUIREMENTS ARE SATISFIED

Congress has made clear its intention that class action claims be resolved in the federal courts, stating that CAFA is "intended to expand substantially federal court jurisdiction over class actions," and that "its provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant." S. Rep. No. 109-14 at 43 (2005) (reprinted in 2005 U.S.C.C.A.N. 3, 41). Because all the requirements for jurisdiction under CAFA are met, plaintiff's action should proceed in a federal forum.

1. **Class Action.** There is no dispute that plaintiff has filed a putative "class action," which is defined under CAFA as "any civil action under Rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). The plaintiff filed her complaint on behalf of herself and the putative "Class," which the Complaint defines as "all persons in California from whom

Defendant requested and recorded personal identification information as part of a credit card transaction, wherein the cardholder purchased product(s) from Defendant, during the time period from one year prior to the filing of this Complaint until said practice is terminated." Complaint at ¶ 10 (attached hereto as Exhibit A).

2. **Diversity of Citizenship**. At the time this lawsuit was filed and as of the date of this Notice, Everfast was and is a Delaware corporation with its principal place of business, headquarters, and distribution center in Kennett Square, Pennsylvania. *See* Declaration of Roy B. Simpson ("Declaration") at ¶¶ 3, 5-7. (Attached hereto as Exhibit B).

In determining a corporation's principal place of business for the purposes of citizenship, courts employ two tests: the "place of operations" test and the "nerve center" test. *Arellano v. Home Depot U.S.A., Inc.*, 245 F. Supp. 2d 1102 (S.D. Cal. 2003). Under the "place of operations" test, a corporation's principal place of business is the state which "contains a substantial predominance of corporate operations." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 500 (9th Cir. 1990). This test should be used if a corporation conducts "substantially all" of its operations in one state. *Arellano,* 245 F. Supp. 2d 1102; Whether a state contains a "substantial predominance" of a corporation's operations depends on the location of the employees, retail locations, and production activities. *See Tosco* at 500.

Where no single state contains a substantial predominance of the corporation's business activities, and the corporation conducts business in many states, courts apply the "nerve center" test. *Arellano*, 245 F. Supp. 2d 1106; Under the "nerve center test," a corporation's principal place of business is the state where the majority of its executive and administrative functions are performed. *See id.*

In this case, the "place of operations" test should not apply because Everfast owns and operates ninety-nine retail stores in thirty states nationwide. Declaration at ¶ 4. However, even if it did apply, Everfast's principal place of business would not be California because only seventeen percent of its stores and less than fifteen percent of its

employees are located in the state of California. Declaration at ¶ 4. Additionally, no production, distribution, or administrative activities take place in California. Declaration at ¶¶ 5-7. Rather, all of Everfast's corporate operations and executive and administrative functions take place in Kennett Square, Pennsylvania, where both its corporate headquarters and only Distribution Center are located. Declaration at ¶¶ 5-7. Furthermore, Everfast's, legal, finance, accounting, merchandising, purchasing, marketing, information technology, warehousing, fabric order fulfillment, human resources, real estate, and customer service departments are also based in Pennsylvania. Declaration at ¶ 7. Therefore, because a substantial predominance of Everfast's corporate operations take place there, Pennsylvania is Everfast's principal place of business under the "place of operations" test.

Because Everfast conducts business in many states nationwide, the "nerve center" test should apply. As noted above, all of Everfast's executive and administrative functions are performed in Pennsylvania. Declaration at ¶ 7. All corporate officers work out of Kennett Square, and all corporate policies and procedures originate there. Id. Accordingly, Pennsylvania is Everfast's principal place of business under the "nerve center" test.

At the time of the filing of this action and as of the date of this Notice, the named plaintiff, Nancy Fogelstrom, was a resident and citizen of California. Complaint at ¶ 9. Therefore, the diversity requirement of 28 U.S.C. § 1332(c)(2)(A) is satisfied.

3. **Amount in Controversy**. Where a Complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum. *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). The preponderance of the evidence standard means only that the defendant must provide evidence establishing that it is "*more likely than not*" that the amount in controversy is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). This standard is not "daunting," and courts recognize that a removing defendant is not

obligated to "research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp.2d 1199 (E.D. Cal., 2008) (*citing McCraw v. Lyons*, 863 F.Supp. 430, 434 (W.D. Ky 1994)).

The amount in controversy in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, satisfying the amount in controversy requirement of 28 U.S.C. § 1332(d)(2). Plaintiff prays in the Complaint for a wide variety of relief, including:

(1) Statutory penalties to plaintiff and members of the putative class in an amount "to which he or she is entitled under" Cal. Civ. Code § 1747.08(e);

(2) Fluid or *cy pres* recovery "where necessary to prevent Defendant from retaining the benefits of its wrongful conduct;"

(3) Injunctive relief;

(4) Attorneys' fees;

(5) Costs; and

(6) Prejudgment interest

*See* Prayer for Relief.

Based on the first category of statutory penalties, it is clear that the amount in controversy in this action is more than $5,000,000. In determining whether the jurisdictional amount in controversy has been satisfied, courts may consider the maximum statutory penalty available. *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n. 3 (9th Cir. 2000). In addition, district courts in the Southern and Central Districts of California have looked to the statutory maximum of $1000 set forth in § 1747.08, holding that defendant need only establish that there are at least 5001 putative class claims in order to demonstrate that the amount in controversy meets CAFA's amount in controversy requirement. *Saulic v. Symantec Corp.*, 2007 WL 5074883 (C.D. Cal.); *Romeo v. Home Depot U.S.A., Inc.*, Case No. 06-CV-1505 IEG (BLM) (Order Denying Plaintiffs' Motion to Remand). The Complaint alleges that plaintiff and the putative class are "entitled to civil penalties in amounts of up to one thousand dollars ($1000) per

violation." Complaint at ¶ 43. Plaintiff has therefore pled the statutory maximum set forth in § 1747.08.

In California, Everfast annually processes more than 5001 credit card transactions. *See* Declaration at ¶ 2. Consequently, potential statutory penalties alone could well exceed the $5,000,000 threshold required by CAFA. 28 U.S.C. 1332(d)(2). Moreover, plaintiff also seeks attorneys' fees, costs, interest, *cy pres* recovery, as well as injunctive relief, which could require Everfast to implement costly new policies and procedures. In light of plaintiff's Prayer for Relief, it is clear that the amount in controversy in this action exceeds $5,000,000, which confers jurisdiction on this Court under CAFA.

Notably, in three other putative class actions recently brought under the Song-Beverly Act, the defendant successfully removed the case to federal court and prevailed on a motion to remand where plaintiff alleged statutory penalties and there were more than 5000 credit card transactions. In *Korn v. Polo Ralph Lauren Corp.*, where plaintiff pled the statutory maximum under § 1747.08, defendant's declaration providing that defendant had processed more than 5,000 credit card transactions over the last year in the state of California was sufficient to show that the number of class claimants satisfied CAFA's jurisdictional requirements. 536 F.Supp.2d 1199, 1206 (E.D. Cal., 2008); *Saulic v. Symantec Corp., supra,* 2007 WL 5074883; *Romeo v. Home Depot U.S.A., Inc., supra*, Case No. 06-CV-1505 IEG (BLM), collectively attached hereto as Exhibit C.

4. **Number of Proposed Class Members**. Plaintiff asserts that the putative class includes "any person in California from whom Defendant requested and recorded personal identification information as part of a credit card transaction, wherein the cardholder purchased product(s) from Defendant, during the time period from one year prior to the filing of this Complaint and until said practice is terminated." Complaint at ¶ 10. Plaintiff further alleges that "members of the Class are so numerous that joinder of all members is impracticable," and that "Defendant has accepted credit cards for the transaction of business throughout California." Complaint at ¶7. Because Everfast processes more than 5001 credit card transactions for customers each year in California,

this action satisfies the requirement of 28 U.S.C. § 1332(d)(5) that the putative class include at least 100 persons. Declaration at ¶ 2.

5. **Timeliness**. This removal notice is timely filed as required by 28 U.S.C. § 1446(b). Everfast was served with the Complaint on June 30, 2008.

6. **Exceptions Do Not Apply**. The exceptions to removal under 28 U.S.C. §§ 1332(d) and 1446 do not apply.

**OTHER PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED**

Everfast has complied with 28 U.S.C. §§ 1446(a) and (d). Under 28 U.S.C. § 1446(a), a true and correct copy of all of the process, pleadings, or orders on file in state court or served on Everfast in the state court are provided as Exhibit A. Pursuant to 28 U.S.C. § 1446(d), a notice of filing of removal (with a copy of this notice of removal) will be promptly filed with the clerk of the Superior Court of California, County of San Diego, Case No. 37-2008-00086675-CU-BT-CTL, and will promptly be served on plaintiff's attorneys.

**CONCLUSION**

By this notice and attachments, Everfast does not waive any objections it may have as to improper service, jurisdiction, or venue, or any other defenses or objections to this action. Likewise, Everfast intends no admission of fact, law, or liability by this notice, and reserves all defenses, motions, and pleas. At this time, Everfast seeks only that this action be removed to this Court, that all further proceedings in the state court be stayed, and that Everfast obtain all additional relief to which it is entitled.

Dated: July 29, 2008

DRINKER BIDDLE & REATH LLP

By: Siobhan A. Cullen
/ JOHN J. POWERS
RODNEY M. HUDSON
ANDREA A. MEI
SIOBHAN A. CULLEN

Attorneys for Defendant
Everfast, Inc.

**TABLE OF CONTENTS**

| Exhibit | Description |
| --- | --- |
| A. | Plaintiff's Complaint .......... 8 |
| B. | Declaration of Roy B. Simpson .......... 25 |
| C. | *Korn v. Polo Ralph Lauren Corp.*,536 F. Supp.2d 1199 (E.D. Cal., 2008); *Saulic v. Symantec Corp.*, 2007 WL 5074883 (C.D. Cal.); and *Romeo v. Home Depot U.S.A., Inc.*, Case No. 06-CV-1505 IEG (BLM) .......... 27 |

Exhibit A



CORPORATION SERVICE COMPANY®

KG3 / ALL
Transmittal Number: 5875122
Date Processed: 07/01/2008

# Notice of Service of Process

**Primary Contact:** Roy B Simpson
Everfast, Inc.
203 Gale Ln
Walnut Rd. Industrial Park
Kennett Square, PA 19348

| | |
|---|---|
| **Entity:** | Everfast, Inc.<br>Entity ID Number 0520632 |
| **Entity Served:** | Everfast, Inc. |
| **Title of Action:** | Nancy Fogelstrom vs. Everfast, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Other |
| **Court:** | San Diego Superior Court, California |
| **Case Number:** | 37-2008-00086675-CU-BT-CTL |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 06/30/2008 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Plaintiff's Attorney:** | James R. Patterson<br>619-756-6900 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road Wilmington, DE 19808 (888) 690-2882 | sop@cscinfo.com

06/30/2008 13:09 FAX 6196850... CAL_EXPRESS 002/017

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CIVIL BUSINESS OFFICE 9

2008 JUN 27 P 12:37

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

EVERFAST, INC., a Delaware corporation; and DOES 1 through 50 inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

NANCY FOGELSTROM, individually; on behalf of herself and all others similarly situated

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una Carta o una llamada telefóinica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la cortey más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la Corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia. Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is
*(El nombre y dirección de la corte es):*

CASE NUMBER: *(Número del Caso)*: 37-2008-00086675-CU-BT-CTL

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

- [x] HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
- [ ] NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081-6543
- [ ] EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
- [ ] RAMONA BRANCH 1428 MONTECITO RD., RAMONA CA 92065-5200
- [ ] SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649
- [ ] JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el nómero de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

James R. Patterson / Cary A. Kinkead
HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway, Ste. 1905
San Diego, CA 92101
Tel: 619-756-6990

DATE: *(Fecha)* JUN 27 2008

CLERK OF THE SUPERIOR COURT
Clerk, by *(Secretario)* L. TIEMERSMA, Deputy *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010))
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:
3. [x] on behalf of *(specify)*: Everfast, Inc., a Delaware corporation

under
- [x] CCP 416.10 (corporation)
- [ ] CCP 416.20 (defunct corporation)
- [ ] CCP 416.40 (association or partnership)
- [ ] other *(specify)*:
- [ ] CCP 416.60 (minor)
- [ ] CCP 416.70 (conservatee)
- [ ] CCP 416.90 (individual)

4. [ ] by personal delivery on *(date)*:

Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. January 1, 2004] SDSC CIV-219(Rev. 1-04)

SUMMONS

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc. www.USCourtForms.com

Exhibit A
Page 9

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
James R. Patterson (SBN: 211102) Cary A. Kinkead (SBN: 216545)
HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway, Ste. 1905
San Diego, CA 92101
TELEPHONE NO.: 619-756-6990 FAX NO.: 619-756-6991
ATTORNEY FOR (Name): Plaintiff NANCY FOGELSTROM

FOR COURT USE ONLY

CIVIL BUSINESS OFFICE 9
2008 JUN 27 P 12:37

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central Division

CASE NAME: NANCY FOGELSTROM v. EVERFAST, INC., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | 37-2008-00086675-CU-BT-CTL<br>JUDGE:<br>DEPT: |

*Items 1-5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☒ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800-1812)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition (not specified above) (43)

2. This case ☐ is ☒ is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Type of remedies sought (*check all that apply*):
   a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action (*specify*): 1
5. This case ☒ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: June 27, 2008
James R. Patterson
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]

CIVIL CASE COVER SHEET

American Legal Net, Inc.
www.USCourtForms.com

Cal. Rules of Court, rules 201.8, 1800-1812;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central
TELEPHONE NUMBER: (619) 450-7067

PLAINTIFF(S) / PETITIONER(S): Nancy Fogelstrom

DEFENDANT(S) / RESPONDENT(S): Everfast Inc

FOGELSTROM VS EVERFAST INC

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER: 37-2008-00086675-CU-BT-CTL |
|---|---|

Judge: David B. Oberholtzer

Department: C-67

COMPLAINT/PETITION FILED: 06/27/2008

**CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW**

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2008-00086675-CU-BT-CTL CASE TITLE: Fogelstrom vs. Everfast Inc

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

## ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

## ADR OPTIONS

**1) CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

**2) JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME: Central | |
| PLAINTIFF(S): Nancy Fogelstrom | |
| DEFENDANT(S): Everfast Inc | |
| SHORT TITLE: FOGELSTROM VS. EVERFAST INC | |
| **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221)** | CASE NUMBER: 37-2008-00086675-CU-BT-CTL |

Judge: David B. Oberholtzer

Department: C-67

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

- ☐ Court-Referred Mediation Program
- ☐ Private Neutral Evaluation
- ☐ Private Mini-Trial
- ☐ Private Summary Jury Trial
- ☐ Private Settlement Conference with Private Neutral
- ☐ Other (specify): ______
- ☐ Court-Ordered Nonbinding Arbitration
- ☐ Court-Ordered Binding Arbitration (Stipulated)
- ☐ Private Reference to General Referee
- ☐ Private Reference to Judge
- ☐ Private Binding Arbitration

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) ______

Alternate: (mediation & arbitration only) ______

Date: ______ Date: ______

______
Name of Plaintiff

______
Name of Defendant

______
Signature

______
Signature

______
Name of Plaintiff's Attorney

______
Name of Defendant's Attorney

______
Signature

______
Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

**IT IS SO ORDERED.**

Dated: 06/27/2008

______
JUDGE OF THE SUPERIOR COURT

James R. Patterson, State Bar No. 211102
Cary A. Kinkead, State Bar No. 216545
HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway, Suite 1905
San Diego, CA 92101
Telephone: (619) 756-6990
Facsimile: (619) 756-6991

James M. Lindsay, State Bar No. 164758
Gene J. Stonebarger, State Bar No. 209461
LINDSAY & STONEBARGER
620 Coolidge Drive, Suite 225
Folsom, CA 95630
Telephone: (916) 294-0002
Facsimile: (916) 294-0012

Attorneys for Plaintiff and the Class

CIVIL ... OFFICE 9
2008 JUN 27 P 12:3...
... COURT ... CA

SUPERIOR COURT OF CALIFORNIA,

COUNTY OF SAN DIEGO

NANCY FOGELSTROM, individually; on behalf of herself and all others similarly situated,

Plaintiffs,

vs.

EVERFAST, INC., a Delaware corporation; and DOES 1 through 50 inclusive,

Defendants.

CASE NO. 37-2008-00086675-CU-BT-CTL

**CLASS ACTION**

**COMPLAINT FOR VIOLATIONS OF CALIFORNIA CIVIL CODE §1747.08 [SONG-BEVERLY CREDIT CARD ACT OF 1971]**

Plaintiff NANCY FOGELSTROM, on behalf of herself and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff by and through her attorneys, as follows:

I.

**INTRODUCTION**

1. California Civil Code section 1747.08 generally states that when a merchant is engaged in a retail transaction with a customer, the merchant may neither (1) request a telephone number and/or address from a customer paying for goods with a credit card, and then record that telephone number and/or address upon the credit card transaction form or otherwise; nor (2) utilize, in any credit card transaction, a credit card form which contains preprinted spaces

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

specifically designated for filling in the telephone number and/or address of the cardholder.[1]

2. Defendant operates retail stores throughout California. Defendant's acts and practices as herein alleged were at all times intentional.

3. Defendant is engaged in a pattern of unlawful and deceptive business practices by utilizing an "Address Capture Policy" whereby Defendant's cashiers both request and record addresses and credit card numbers from customers using credit cards at the point-of-sale in Defendant's retail establishments.

4. Defendant is also engaged in a pattern of unfair, unlawful and deceptive business practices by utilizing credit card forms, during credit card transactions, which contain preprinted spaces specifically designated for filling in the address of the cardholder.

5. Defendant has violated California Civil Code section 1747.08(a)(2) by and through Defendant's requesting and recording of consumers' credit card numbers and addresses at the point-of-sale at Defendant's retail establishments.

6. Defendant has violated California Civil Code section 1747.08(a)(3) by and through Defendant's utilization of credit card forms which contain preprinted spaces specifically designated for filling in the address of the cardholder in credit card transactions with customers.

///

///

///

[1] California Civil Code section 1747.08 states in relevant part:

"(a) Except as provided in subdivision (c), no person, firm, partnership, association, or corporation which accepts credit cards for the transaction of business shall do either of the following:

(2) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.

(3) Utilize, in any credit card transaction, a credit card form which contains preprinted spaces specifically designated for filling in any personal identification information of the cardholder.

(b) For purposes of this section 'personal identification information,' means information concerning the cardholder, other than information set forth on the credit card, and including, but not limited to, the cardholder's address and telephone number."

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

## II.

## JURISDICTION AND VENUE

7. Defendant does business in the State of California, and in the County of San Diego. Defendant has accepted credit cards for the transaction of business throughout California, including the County of San Diego, which has caused both obligations and liability of Defendant to arise in the County of San Diego. Plaintiff Nancy Fogelstrom resides in the County of San Diego.

8. The amount in controversy exceeds the jurisdictional minimum of this Court.

## III.

## THE PARTIES

### A. Plaintiffs

9. Plaintiff NANCY FOGELSTROM (herein referred to as "Plaintiff") is a resident of San Diego, California.

10. Plaintiff brings this lawsuit on behalf of an ascertainable statewide class consisting of all persons in California from whom Defendant requested and recorded personal identification information as part of a credit card transaction, wherein the cardholder purchased product(s) from Defendant, during the time period from one year prior to the filing of this Complaint and until said practice is terminated (the "Class"). Excluded from the Class are Defendant, its corporate parents, subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, successors or assigns or any such excluded persons or entities, and the attorneys for Plaintiff in this action.

### B. Defendant

11. Defendant Everfast, Inc. (hereinafter referred to as "Defendant") is a Delaware corporation, with its principal place of business in California. Defendant operates numerous retail stores throughout California, including stores in San Diego County, under the name Calico Corners.

///

///

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

C. **Doe Defendants**

12. Except as described herein, Plaintiff is ignorant of the true names of Defendants sued as DOES 1 through 50, inclusive, and the nature of their wrongful conduct, and therefore sues these DOE Defendants by such fictitious names. Plaintiff will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

D. **Agency/Aiding and Abetting**

13. At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were active within the course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

14. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the class, as alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongful conduct, wrongful goals, and wrongdoing.

IV.

**CONDUCT GIVING RISE TO VIOLATIONS OF THE LAW**

A. **Plaintiff's Contact with Defendant**

15. Within the last 12 months, Plaintiff went to one of Defendant's retail stores in San Diego County, to purchase certain products from Defendant.

16. Plaintiff entered Defendant's store and proceeded to select products from the store that Plaintiff intended to purchase.

17. After selecting the items, Plaintiff proceeded to the cashiers' section of Defendant's store to pay for the item selected through the use of a credit card.

///

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

18. Defendant's employee saw that Plaintiff had selected products that Plaintiff wished to purchase from Defendant and Defendant's employee then proceeded to inform Plaintiff of the amounts due to Defendant for said products. Plaintiff handed Defendant's employee Plaintiff's credit card, and Defendant proceeded to swipe, enter, and/or record the credit card number into an electronic cash register at the checkout counter adjacent to both the employee and Plaintiff.

19. As part of Defendant's Address Capture Policy, Defendant's employee then requested personal identification information from Plaintiff in the form of Plaintiff's address, without informing Plaintiff of the consequences if Plaintiff did not provide Defendant's employee with Plaintiff's personal identification information. Plaintiff, believing that she was required to provide her address to complete the transaction, told Defendant's employee Plaintiff's personal identification information.

20. Defendant's employee then typed and recorded Plaintiff's address into an electronic cash register at the checkout counter adjacent to both the employee and Plaintiff.

21. At this point in the transaction, Defendant has Plaintiff's credit card number and address in the same database.

22. Defendant's employee then printed out a credit card transaction form, which previously contained preprinted spaces specifically designated for filling in the address of the cardholder and at this point in the transaction the credit card form contained Plaintiff's address which had filled said preprinted spaces. Defendant's employee then handed the form to Plaintiff to sign. Plaintiff signed the form and then handed it back to Defendant's employee.

23. Defendant's employee and Plaintiff completed the transaction and Plaintiff left Defendant's store with his purchased items.

## V.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

24. This lawsuit is brought on behalf of an ascertainable statewide class consisting of all persons in California from whom Defendant requested and recorded personal identification information as part of a credit card transaction, wherein the cardholder purchased product(s)

from Defendant, during the time period from one year prior to the filing of this Complaint and until said practice is terminated (the "Class"). Excluded from the Class are Defendant, its corporate parents, subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, successors or assigns of any such excluded persons or entities.

25. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Purchase Class members is unknown to Plaintiff at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendant and its agents.

26. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable, the likelihood of individual Class members prosecuting separate claims is remote and individual Class members do not have a significant interest in individually controlling the prosecution of separate actions. Relief concerning Plaintiff's rights under the laws alleged herein and with respect to the Class as a whole would be appropriate. Plaintiff knows of no difficulty to be encountered in the management of this action which would preclude its maintenance as a class action.

27. There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Plaintiff's claims are typical of the members of the Class, and Plaintiff can fairly and adequately represent the interests of the Class.

28. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

a. whether each Class member engaged in a credit card transaction with Defendant;

b. whether Defendant requested the cardholder to provide personal identification information and recorded the personal identification of the cardholder, during credit card transactions with Class members;

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

c. whether Defendant's conduct of requesting the cardholder to provide personal identification information during credit card transactions and recording the personal identification information of the cardholder constitutes violations of California Civil Code section 1747.08(a)(2);

d. whether Defendant utilized a credit card form which contains preprinted spaces specifically designated for filling in the address of the cardholder, during credit card transactions with Class members; and

e. whether Defendant's conduct of utilizing a transaction form during credit card transactions which contains preprinted spaces specifically designated for filling in the address of the cardholder constitutes violations of California Civil Code section 1747.08(a)(3).

29. Plaintiff's claims are typical of those of the other Class members because Plaintiff, like every other Class member, was exposed to virtually identical conduct and is entitled to civil penalties in amounts of up to one thousand dollars ($1,000) per violation pursuant to California Civil Code section 1747.08(e).

30. Plaintiff can fairly and adequately represent the interests of the Class, she has no conflicts of interest with other Class members, and has retained counsel competent and experienced in class action and civil litigation.

31. The amount in controversy does not exceed $74,999.99 as to Plaintiff or any other individual Class member.

**FIRST CAUSE OF ACTION**

**VIOLATIONS OF CALIFORNIA CIVIL CODE § 1747.08(a)(2)**

32. Plaintiff refers to and incorporates by reference as though set forth fully herein paragraphs 1 through 31 of this Complaint.

33. California Civil Code section 1747.08 prohibits any corporation, which accepts credit cards for the transaction of business, from requesting the cardholder to provide personal identification information which the corporation then records.

34. Defendant is a corporation that accepts credit cards for the transaction of business.

///

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

35. During credit card transactions entered into at Defendant's stores on each and every day during the one-year period preceding the filing of this class action complaint, Defendant utilized, and continues to utilize, an "Address Capture Policy" whereby Defendant's cashiers both request and record addresses and credit card numbers from customers using credit cards at the point-of-sale in Defendant's retail establishments.

36. It is and was Defendant's routine business practice to intentionally engage in the conduct described in this cause of action with respect to every person who, while using a credit card, purchases any product from any of Defendant's stores in the State of California.

37. Due to Defendant's violations as set forth herein, Plaintiff and the Class are entitled to civil penalties in amounts of up to one thousand dollars ($1,000) per violation pursuant to California Civil Code section 1747.08(e).

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## SECOND CAUSE OF ACTION

## VIOLATIONS OF CALIFORNIA CIVIL CODE § 1747.08(a)(3)

38. Plaintiff refers to and incorporates by reference as though set forth fully herein paragraphs 1 through 37 of this Complaint.

39. California Civil Code section 1747.08 prohibits any person, firm, partnership, association, or corporation, which accepts credit cards for the transaction of business, from utilizing, in any credit card transaction, a credit card form which contains preprinted spaces specifically designated for filling in the address of the cardholder.

40. Defendant is a corporation that accepts credit cards for the transaction of business.

41. During credit card transactions entered into at each of Defendant's stores on each and every day during the one-year period preceding the filing of the class action complaint in this action, Defendant utilized, in each and every credit card transaction entered into with Plaintiff and the Class, a credit card form which contains preprinted spaces specifically designated for filling in the address of the cardholder in violation of California Civil Code section 1747.08(a)(3).

///

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

42. It is and was Defendant's routine business practice to intentionally engage in the conduct described in this cause of action with respect to Plaintiff and every member of the Class who entered into a credit card transaction at any of Defendant's stores in the State of California.

43. Due to Defendant's violations as set forth herein, Plaintiffs and the Class are entitled to civil penalties in amounts of up to one thousand dollars ($1,000) per violation pursuant to California Civil Code section 1747.08(e).

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

**PRAYER FOR RELIEF**

PLAINTIFF AND THE CLASS PRAY for judgment against Defendant as follows:

1. That the Court award to Plaintiff and to each member of the Class the civil penalty to which he or she is entitled under California Civil Code section 1747.08(e);

2. For distribution of any moneys recovered on behalf of the Class of similarly situated consumers or the general public via fluid recovery or *cy pres* recovery where necessary to prevent Defendant from retaining the benefits of its wrongful conduct;

3. That the Court preliminarily and permanently enjoin Defendant from utilizing an "Address Capture Policy" whereby Defendant's cashiers both request and record addresses from customers using credit cards at the point-of-sale in Defendant's retail establishments;

4. That the Court preliminarily and permanently enjoin Defendant from utilizing a credit card form which contains preprinted spaces specifically designated for filling in the address of the cardholder in violation of California Civil Code section 1747.08(a)(3);

5. That the Court certifies this action as a class action;

6. For an award of attorneys' fees as authorized by statute including, but not limited to, the provisions of California Code of Civil Procedure § 1021.5, and as authorized under the "common fund" doctrine, and as authorized by the "substantial benefit" doctrine;

///

///

///

///

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

7. For costs of the suit;

8. For prejudgment interest at the legal rate;

9. And for such other relief as the Court may deem proper.

DATED: June 27, 2008

HARRISON PATTERSON & O'CONNOR LLP

By: James R. Patterson
Attorneys for Plaintiff and the Class

HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway
29TH Floor
San Diego, CA 92101

John J. Powers (State Bar No. 145623)
Rodney M. Hudson (State Bar No. 189363)
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Facsimile: (415) 591-7510
E-mail: john.powers@dbr.com
E-mail: rodney.hudson@dbr.com

Attorneys for Defendant Everfast, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NANCY FOGELSTROM, individually; on behalf of herself and all others similarly situated,

Plaintiffs,

v.

EVERFAST, INC., a Delaware corporation; and DOES 1 through 50 inclusive,

Defendants.

Case No.

**DECLARATION OF ROY B. SIMPSON, JR. IN SUPPORT OF EVERFAST'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

I, Roy B. Simpson, Jr., declare as follows:

1. I am President and Chief Executive Officer of Everfast, Inc., d/b/a Calico Corners ("Everfast"), and have worked in this position for more than five (5) years. All of the facts stated in this declaration are based upon my personal knowledge and a review of the files, and if called as a witness, I would and could competently testify to the veracity of the following facts.

2. As part of my employment duties, I am familiar with Everfast's processing of credit card transactions. Based upon my personal knowledge, and a review of pertinent records, between June 27, 2007 and June 27, 2008, Everfast processed more than 5001 credit card transactions from sales in the State of California.

3. Everfast is incorporated in the State of Delaware.

4. Everfast currently owns and operates ninety-nine retail stores in thirty states nationwide. Seventeen (or approximately seventeen percent) of these stores and less than fifteen percent of Everfast's employees are located in California.

5. Everfast has one Distribution Center. It is not located in California. Rather, the Distribution Center is located in Kennett Square, Pennsylvania.

6. Everfast's corporate headquarters are located in Kennett Square, Pennsylvania.

7. Kennett Square, Pennsylvania is Everfast's principal place of business, where all corporate operations, and executive and administrative functions take place. All corporate officers work out of Kennett Square, and all corporate policies, procedures, strategies, and decisions originate there. Additionally, Everfast's legal, finance, accounting, merchandising, purchasing, marketing, information technology, warehousing, fabric order fulfillment, human resources, real estate, and customer service departments are based in Pennsylvania.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on July 26, 2008 at Kennett Square, Pennsylvania.

ROY B. SIMPSON, JR.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

BRIAN KORN, individually; on behalf of all others similarly situated,

Plaintiffs,

v.

POLO RALPH LAUREN CORPORATION, a Delaware Corporation; and DOES 1 through 50 inclusive,

Defendants.

NO. CIV. S-07-02745 FCD JFM

MEMORANDUM AND ORDER

----ooOoo----

This matter is before the court on plaintiff Brian Korn's ("plaintiff" or "Korn") motion to remand the instant action to the Superior Court of California for the County of Solano on the grounds that defendant has not established that (1) it is not a citizen of California; (2) the putative class members' claims exceed the requisite jurisdictional amount in controversy of $5,000,000 pursuant to the Class Action Fairness Act of 2005 (the "CAFA"), 28 U.S.C. § 1332(d); and (3) the exceptions to CAFA do not apply. Defendant Polo Ralph Lauren Corporation ("defendant"

or "Polo") opposes the motion, arguing that it has proffered sufficient evidence to demonstrate that it is a non-citizen of California and that, more likely than not, the amount in controversy exceeds the jurisdictional minimum. For the reasons set forth below,[1] plaintiff's motion is DENIED.

**BACKGROUND**

On November 2, 2007, plaintiff filed a class action complaint in the Solano County Superior Court in the State of California (hereinafter "the complaint"), alleging two causes of action for violations of California Civil Code § 1747.08, arising out of defendant's (1) requests for and recording of telephone numbers and addresses when a customer pays for goods with a credit card; and (2) utilization of a credit card form which contains preprinted spaces for the telephone number and address of the cardholder. (Compl. ¶ 1). Plaintiff's complaint identifies two putative classes, the "Purchase Class" and the "Refund Class." (Id. ¶¶ 28, 36). The putative Purchase Class consists of "all persons in California from whom [d]efendant requested and recorded personal identification information as part of a credit card transaction." (Id. ¶ 28). The putative Refund Class consists of "all persons in California who entered into credit refund transactions with [d]efendant, wherein a credit card transaction form was utilized which contained a pre-printed space specifically designated for filling in the telephone number and/or address of the cardholder." (Id. ¶ 36).

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. See E.D. Cal. L.R. 78-230(h).

On December 19, 2007, defendant removed the action to this court on the basis of the CAFA. The CAFA grants district courts original jurisdiction over civil class actions filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant and the amount in controversy for the putative class members in the aggregate exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). The Act authorizes removal of such actions pursuant to 28 U.S.C. § 1446.

Plaintiff challenges the propriety of the removal on grounds that the minimal diversity of citizenship requirement is not met and that defendant has not demonstrated the requisite amount in controversy. Plaintiff's complaint alleges that Defendant is a Delaware corporation with its principal place of business in New Jersey. (Id. ¶ 11). Plaintiff's complaint does not allege a specific amount of damages. However, the complaint does provide that the statutory civil penalties for the alleged violations are up to $1000 per violation. In removing the action, defendant supported its Notice of Removal with declarations setting forth the underlying facts needed to calculate the amount in controversy based on the allegations in the complaint. Specifically, defendant submitted the declaration of Lee Jurgens ("Jurgens"), Director of Sales Audit for defendant, which provides that defendant processed more than 5,000 credit card transactions over the last year in the state of California. (Decl. of Lee Jurgens ("Jurgens Decl."), Ex. B to Notice of Removal, filed Dec. 19, 2007). Defendants contend that this evidence demonstrates that the amount in controversy exceeds

$5,000,000, notwithstanding attorneys' fees, which are pled and properly considered in ascertaining the amount in controversy.

**ANALYSIS**

**A. Diversity of Citizenship**

Plaintiff contends that the court should remand this matter to state court because defendants have not demonstrated that there is diversity of citizenship. Specifically, plaintiff contends that defendant fails to allege specific facts to prove that it is not a "citizen" of California.

Where a party seeks to invoke federal jurisdiction on the basis of diversity of citizenship, the law places the burden of persuasion on the party seeking to invoke the court's jurisdiction. Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990). For purposes of diversity jurisdiction, a corporation is a citizen in the state of its incorporation, as well as in the state of its principal place of business. Breitman v. May Co. California, 37 F.3d 562, 564 (9th Cir. 1994).

As an initial matter, plaintiff alleges in his complaint that defendant is a Delaware corporation with its principal place of business in New Jersey. (Compl. ¶ 11). A statement in a complaint is a judicial admission. Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." Id. Plaintiff is bound by the allegations in his complaint that assert defendant's citizenship,

for purposes of diversity jurisdiction, is in Delaware and New Jersey.

However, defendant has also proffered evidence that demonstrates it is not a citizen of California for purposes of diversity jurisdiction.[3] In the Ninth Circuit, courts must first apply the "place of operations test" in determining the principal place of business of a corporation. "The 'place of operations test' locates a corporation's principal place of business in the state which 'contains a substantial predominance of corporate operations.'" Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 500 (9th Cir. 2001). "Substantial predominance" requires that the amount of a corporation's business activity in one state be significantly larger than in any other state. Id. Factors that may be considered in this inquiry include where sales take place, production activities, location of employees, tangible property, and sources of income. Id. If the activities of a corporation do not substantially predominate in any one state, courts must apply the "nerve center test," which "locates a corporation's principal place of business in the state where the majority of its executive and administrative functions are performed." Id.

Defendant presents evidence that it does not conduct a substantial predominance of its business activities in California. Defendant operates 445 stores worldwide with 273 stores in the United States. (Decl. of Laurie Winthrop

[3] Neither party disputes that defendant is a Delaware corporation. (See Decl. of Laurie Winthrop ("Winthrop Decl."), filed Feb. 8, 2008, ¶ 4).

("Winthrop Decl."), filed Feb. 8, 2008, ¶ 5). Of the 273 stores in the United States, 37 are located in California, 35 in New York, 23 in Florida, 17 in Texas, 8 in Georgia and Pennsylvania, 6 in North Carolina and New Jersey, and 5 in Illinois and Connecticut. (Id.) Defendant also has less employees in California than in other locations; 3,661 of its employees are located in New York as compared to 1,081 employees located in California. (Id. ¶ 6). Further, defendant leases less space in California than in New York; it leases 1,044,690 square feet in New York compared to 258,174 square feet of property leased in California. (Id. ¶ 7). Finally, defendant earned less income from retail store operations in California (12.8%) than it did in New York (18.2%) and Florida (13.4%). (Id. ¶ 8). Based upon this evidence, defendant has demonstrated that its business activities in California are not significantly larger than in any other state. See Ho v. Ikon Office Solutions, 143 F. Supp. 2d 1163, 1166-67 (N.D. Cal. 2001) (finding no substantial predominance in California where California business activities generated 7.9% of revenue, Texas and Florida generated 5.4% and 5.3% respectively, and remaining revenue was widely distributed among many states); see also Albino v. Standard Ins. Co., 349 F. Supp. 2d 1334, 1337-38 (S.D. Cal. 2004) (finding no substantial predominance in California even though the majority of defendant's income and sale arose from the state because the vast majority of employees and real property was located in Oregon and because, as the most populated state in the union, California will naturally have more gross sales and more customers); Arellano v. Home Depot U.S.A., Inc., 245 F. Supp. 2d 1102, 1106-

07 (finding no substantial predominance in California where there was only 5.8% differential in work force, a relatively even distribution of real property, and the executive and administrative functions took place elsewhere). As such, defendant's principal place of business is not California based upon the "place of operations test."

Moreover, California is not defendant's principal place of business under the "nerve center test." Defendant's executive and administrative functions take place at its headquarters in New York. (Winthrop Decl. ¶ 4). All corporate officers work out of this office and defendant's corporate policies and procedures are made there. (Id.) Corporate functions such as legal, finance, accounting, marketing, and human resources are based primarily in New York. (Id.) Thus, California is not the state where the majority of defendant's executive and administrative functions are performed.

Because defendant has proffered evidence that California is not its principal place of business under either the "place of operations test" or the "nerve center test," and because defendant is a Delaware corporation, Polo has demonstrated by a preponderance of the evidence that it is not a citizen of California for purposes of diversity jurisdiction.

**B. Amount in Controversy**

Plaintiff also contends that the court should remand this matter to state court because defendants have not demonstrated that the amount in controversy exceeds $5,000,000. Specifically, plaintiff contends that although he has alleged that there is a maximum statutory penalty of $1000 under § 1747.08, the section

does not set forth a specific penalty and a plaintiff may be awarded a penalty below the maximum per violation.

Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum (in this case, $5,000,000 per the CAFA). Singer v. State Farm Mut. Auto Ins. Co., 116 F.3d 373, 376 (9th Cir. 1996).[3] The preponderance of the evidence standard means the "defendant must provide evidence establishing that it is '*more likely than not*' that the amount in controversy exceeds that amount." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (emphasis added) (citation omitted). Said burden is not "daunting," as courts recognize that under this standard, a removing defendant is *not* obligated to "research, state, and prove the plaintiff's claims for damages." McCraw v. Lyons, 863 F. Supp. 430, 434 (W.D. Ky. 1994).

Nevertheless, a court "cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture." Lowdermilk v. United States Bank Nat'l Ass'n, 479 F.3d 994, 1002 (9th Cir. 2007). Rather, a defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum. Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992). In addition to the contents of the removal petition, the court considers "summary-judgment-type evidence

[3] The CAFA did not shift the burden of proof normally applied to removal of a state action to federal court; under the CAFA, the removing defendant, not the class action plaintiff, continues to bear the burden of proof. Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 678 (9th Cir. 2006).

relevant to the amount in controversy at the time of removal," such as affidavits or declarations. Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004) (internal quotations omitted); Singer, 116 F.3d at 374 ("defense counsel submitted declarations to show that the amount in controversy exceeded $50,000"). A court may also consider supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice. Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n. 1 (9th Cir. 2002).

In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will *actually* owe. Rippee v. Boston Market Corp., 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); see also Scherer v. Equitable Life Assurance Society of the United States, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered when determining the amount in controversy; rather, it is the amount put in controversy by the plaintiff's complaint).

Plaintiff's argument that defendant has not established the requisite jurisdictional amount for purposes of the CAFA because the class plaintiffs could be awarded less than the maximum statutory penalty per violation overlooks the critical distinction between the likely recovery per plaintiff and the actual issue before the court, the amount *in controversy* in this

litigation. See Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005) ("The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties."). Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met. Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (citing Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998); Davenport v. Mut. Benefit Health and Accident Ass'n, 325 F.2d 785, 787 (9th Cir. 1963)). Moreover, district courts in the Southern District of California and the Central District of California have looked to the statutory maximum of $1000 set forth in § 1747.08 in determining whether the jurisdictional requirements of the CAFA have been met. Saulic v. Symantec Corp., No. 07-CV-610 (C.D. Cal. Dec. 26, 2007) (holding that where plaintiff had pled that damages could be up to the statutory maximum under § 1747.08, defendants must simply show that there are at least 5,001 putative class claims in order to meet the jurisdiction requirements of the CAFA); Romeo v. The Home Depot, No. 06-CV-1505, 2006 U.S. Dist. LEXIS 79881 (S.D. Cal. Oct. 30, 2006) (same).

Plaintiff's complaint alleges that Korn and every other class member "is entitled to civil penalties in amounts up to one thousand dollars ($1,000) per violation." As such, plaintiff has explicitly pled the statutory maximum set forth in § 1747.08. Plaintiff does not stipulate that he will demand less than the

maximum civil penalty.[4] Therefore, in order to demonstrate that the amount *in controversy* meets the CAFA's jurisdictional requirement, defendant need only demonstrate that there are at least 5,001 putative class claims. Defendant has done so. Defendant has submitted the declaration of Jurgens, Director of Sales Audit for defendant, which provides that defendant processed more than 5,000 credit card transactions over the last year in the state of California. (Jurgens Decl. ¶ 3). Thus, defendant has adduced enough evidence to show that the number of class claimants is sufficient to satisfy the CAFA's jurisdictional requirements.

Because plaintiff alleges in his complaint that defendant is liable for up to $1000 per violation of § 1747.08 in the processing of credit card purchases and returns, and because defendant has proffered evidence that it has processed more than 5,000 credit card transactions, Polo has demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.

**C. Exceptions to the CAFA**

Finally, plaintiff contends that the court should remand this matter to state court because defendants have not demonstrated that the "home state" and "local controversy" exceptions to the CAFA do not apply to this action.

---

[4] Plaintiff cannot avoid satisfaction of the amount in controversy by arguing that the class plaintiffs *may* be awarded less than the statutory maximum. The critical inquiry is the amount placed in controversy by the allegations in plaintiff's complaint.

Although the removing party bears the burden of establishing federal jurisdiction under the CAFA, the party seeking remand bears the burden of proving the applicability of any express statutory exception. Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1023-24 (9thCir. 2007). The Ninth Circuit has recently noted that it is in agreement with all other Circuits to address the issue, in holding that the party seeking remand must demonstrate the applicability of the "home state" and "local controversy" exception to the CAFA. Id. (citing Evans v. Walt. Indus., Inc., 449 F.3d 1159, 1164-65 (11th Cir. 2006); Frazier v. Pioneer Americas LLC, 455 F.3d 542, 546 (5th Cir. 2006); Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 680-81 (7th Cir. 2006)). Therefore, it is plaintiff's burden, not defendant's, to demonstrate that an exception applies to the CAFA.

Moreover, the "home state" and "local controversy" exceptions to the CAFA apply only if "the primary defendants are citizens of the State in which the action was originally filed," 28 U.S.C. § 1332(d)(3), or if at least one defendant "is a citizen of the State in which the action was originally filed," 28 U.S.C. § 1332(d)(4). Defendant Polo is the only named defendant in this action. As set forth above, defendant has demonstrated that it is not a citizen of California for purposes of diversity jurisdiction. Therefore, neither of the statutory exceptions asserted by plaintiff apply.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to remand is DENIED.

/////

IT IS SO ORDERED.

DATED: February 27, 2008



FILED - SOUTHERN DIVISION CLERK U.S. DISTRICT COURT DEC 2 6 2007 CENTRAL DISTRICT OF CALIFORNIA BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

DON SAULIC, individually and on behalf of others similarly situated,

Plaintiff,

v.

SYMANTEC CORPORATION, et al.,

Defendants.

SA CV 07-610 AHS (PLAx)

ORDER DENYING PLAINTIFF'S MOTION TO REMAND

I.

PROCEDURAL BACKGROUND

On April 27, 2007, plaintiff Don Saulic ("plaintiff") filed a Complaint in the Orange County Superior Court. On May 25, 2007, defendant Symantec Corporation, et al. ("defendants"), filed a Notice of Removal in this Court asserting diversity jurisdiction under the Class Action Fairness Act ("CAFA") based on 28 U.S.C. § 1332(d).

On June 22, 2007, plaintiff filed a Motion to Remand to State Court and, If Appropriate to Grant Discovery Pending a Ruling ("Motion to Remand"). Defendant Symantec Corporations filed

Opposition on July 23, 2007. The same day, defendant Digital River Inc., filed a Motion of Joinder in Defendant Symantec Corporation's Opposition. On July 30, 2007, plaintiff filed a reply thereto. The Court took the matter under submission on August 31, 2007.

II.

SUMMARY OF THE COMPLAINT

Defendants Symantec Corporation and Digital River, Inc. are corporations doing business in the State of California. (Compl. ¶¶ 2-3.) Plaintiff, an individual, is a resident of the State of California.

Plaintiff brings the action on behalf of himself and others similarly situated in North and/or South America who have made purchases of goods and/or services from defendants within the prior three years or applicable statute of limitations period. The proposed class is limited to those persons (1) who downloaded defendants' products from the internet without such purchase being sent to them; (2) used a credit car as payment; (3) as to whose purchase transaction(s) California law applies; and, (4) from whom defendants required or requested personal identifying information and/or used a credit card form in violation of California Civil Code section 1747.08 ("section 1747.08").

Plaintiff alleges the following violations of Section 1747.08: (1) defendants utilize credit card forms with preprinted spaces specifically designed for filling in personal identifying information of the cardholder in violation of section 1747.08(a)(3); (2) defendants request or require personal identifying information as a condition of accepting credit card payments in violation of section 1747.08(a)(1) and (2); and, (3)

these violations are ongoing.

Plaintiff requests the following relief: (1) civil penalties pursuant to Section 1747.08(e) "not to exceed two hundred fifty dollars ($250.00) for the first violation and one thousand dollars ($1,000.00) for each subsequent violation; (2) entry of a preliminary injunction followed by a permanent injunction to bar defendants' continued violations of section 1747.08; and, (3) attorney's fees and costs.

III.

**SUMMARY OF PARTIES' CONTENTIONS**

A. Motion for Remand

Plaintiff contends the Court should remand the action because defendants fail to prove diversity jurisdiction and/or that the Complaint satisfies the amount in controversy requirement.

Specifically, defendants do not offer sufficient proof the aggregate amount in controversy for the proposed class exceeds $5,000,000 as required by CAFA. See 28 U.S.C. § 1441(a) and § 1332(d). The single declaration suggesting Symantec has processed at least 5,001 credit card transactions since April 27, 2006, is insufficient. First, the declaration does not establish that these transactions did not also include the delivery of a physical product as part of the transaction. The absence of delivery is necessary for a section 1747.08 claim. Second, the declaration does not establish how many of the purposed transactions involved requests for and/or requirements of personal identifying information in exchange for the product. Again, such requests and/or requirements are necessary for a section 1747.08 claim. Third, the Notice of Removal presumed the maximum civil

penalty of $1,000 will be awarded and therefore presumed that if there are 5,001 transactions, the amount in controversy will exceed $5,000,000. However, the California Supreme Court has ruled that a $1,000 penalty under Section 1747.08 is discretionary. See Linder v. Thrifty Oil, 23 Cal. 4th 429, 447 (2000). Defendant has offered no evidence that the maximum penalty "might reasonably be awarded."

CAFA has not changed the "longstanding rule" that the party seeking removal to federal court bears the burden of establishing federal jurisdiction. Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 686 (9th Cir. 2006).

Because plaintiff does not specify an amount of damages, defendants must establish the jurisdictional amount in controversy by a preponderance of the evidence. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996). The mere "legal possibility" that the amount in controversy is jurisdictionally sufficient is "clearly inconsistent with the limits which Congress has placed on both removal and diversity jurisdiction." Id. at 403. Rather, defendants bear the burden of showing it is "'more likely than not' that the amount in controversy exceeds" the amount necessary to establish diversity jurisdiction. Id. at 404 citing Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996). This preponderance burden strikes "'[t]he proper balance between a plaintiff's right to choose his forum and a defendant's right to remove, without unnecessarily expanding federal diversity jurisdiction.'" Id., citing Tapscott 77 F.3d at 1357.

In general, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles Inc., 980 F.2d 564, 566 (9th Cir. 1992).

see also Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996).

For purposes of diversity jurisdiction, discretionary civil penalties are construed like punitive damages allegations. Brady v. Mercedes-Benz USA, Inc., 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2003); Suman v. Superior Court, 39 Cal. App. 4th 1309, 1320-21 (Cal. Ct. App. 1995). Recent district court decisions in this circuit suggest that where removal is requested, diversity jurisdiction will not lie based on prospective or speculative punitive damages awards. Conrad Associates v. Hartford Accident & Indemnity Co., 994 F. Supp. 1196, 1198 (N.D. Cal. 1998); Burk v. Medical Sav. Ins. Co., 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004). Decisions in other circuits reflect the same view. See Brown v. Jackson Hewitt, Inc., 2007 U.S. Dist. LEXIS 13328 (D. Ohio 2007); Bower v. Am. Cas. Co. of Reading Pa., 2001 U.S. App. LEXIS 18053, 8-11 (6th Cir. 2001); Bush v. GE Transp., 2006 U.S. Dist. LEXIS 12821 (N.D. Ohio 2006); Midwest Motor Supply Co. v. Addis, 2006 U.S. Dist. LEXIS 4663 (S.D. Ohio 2006).

Conrad Associates suggests that when a complaint is initially filed in state court, defendants cannot claim the amount in controversy meets the federal standard for diversity "simply by pointing out that the complaint seeks punitive damages and that any damages awarded under such a claim could total a large sum of money." 994 F. Supp. at 1201. Rather, the court must find it "more likely than not that a potential punitive damages award could sufficiently increase the amount in controversy to meet the jurisdictional requirement." Id.

Defendants also insufficiently identify class members. Based on the evidence offered, there is no way to determine whether

5,001 transactions (1) were made online; (2) for downloaded software; (3) with a credit card; (4) required that personal identifying information be divulged in violation of Section 1747.08; and, (5) were not orders for delivery. The number in the class is presently speculative. Accordingly, the amount of statutory penalties that might be imposed is "mere guesswork."

If the requisite amount in controversy is established, the Court should permit discovery into whether more than one third of the potential class members are California residents thereby defeating the diversity requirement of CAFA. 28 U.S.C. § 1332(d)(3).

B. Opposition

Defendants contend jurisdiction is proper because they have offered conclusive evidence to show (1) there were approximately 3,180,000 online subscription renewal purchases by U.S. customers between July 1, 2006, and May 25, 2007; (2) these customers would have encountered a renewal screen in which personal identifying information would have been requested; (3) less than 5% of the transactions resulted in the delivery of physical products; and, (4) more than 90% of the purchases were with a credit card. (Declaration of Glenn Taylor Decl. ("Taylor Declaration" at ¶¶ 4-5.) Ultimately, the evidence supports finding at least 2,718,900 putative class claimants. (Taylor Decl. at ¶ 6.) Plaintiff's prayer for relief is for the maximum civil penalty of $1,000. Therefore, it is clear the amount in controversy exceeds $5,000,000, satisfying CAFA.

When the amount in controversy is not specified in plaintiff's complaint, "the defendant seeking removal must prove by

a preponderance of evidence the amount in controversy requirement has been met." Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 998 (9th Cir. 2007) (quotation marks omitted). Here, a particular amount of damages was specified by plaintiff: "statutory penalties pursuant to California Civil Code section 1747.08(e) in the amount of $1,000.00 for Plaintiff and for each person similarly situated." (Compl. at Prayer ¶ 1(a).) Having established through the Taylor declaration a minimum number of putative class claimants meeting plaintiff's definition, it is now plaintiff's burden to establish to "a legal certainty" that the jurisdictional minimum cannot be met. Lowdermilk, 479 F.3d at 998, 999.

In his complaint, plaintiff seeks the full statutory penalty of $1,000.00. This is a definite prayer for relief and, therefore, a definite amount in controversy. Because the complaint was filed in state court, plaintiff's damages calculations should be given heightened deference. Sanchez, 102 F.3d at 402 ("[Where the] plaintiff himself has placed the requisite jurisdictional amount in controversy by requesting damages in excess of the jurisdictional amount, . . . it would, of course, make sense to accord plaintiff's own claim some weight in determining the actual amount in controversy.").

Courts as a matter of law, calculate the amount in controversy based upon the maximum amount of civil penalties available to plaintiff. See e.g., Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir, 2005); Romo v. FFG Ins. Co., 397 F. Supp. 2d 1237, 1240 (C.D. Cal. 2005); Brady, 243 F. Supp. 2d at 1009. In accord with Brill, Romo, and Brady, Lowdermilk also considered the maximum statutory penalty available for the number

of putative class claimants the defendant could prove. 479 F.3d at 1001. Ultimately, regardless of whether the case was originally brought in state or federal court, when civil penalties are involved, courts calculate the amount in controversy based on the full potential recovery available to plaintiff. See e.g., Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000); Rosen v. Chrysler Corp., 205 F.3d 918, 922 (6th Cir. 2000); St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998); Miera v. Dairyland Ins. Co., 143 F.3d 1337, 1340 (10th Cir. 1998); Evans v. Yum Brands, Inc., 326 F. Supp. 2d 214, 222 (D.N.H. 2004).

Courts do not treat civil penalties the same as punitive damages in calculating the jurisdictional amount in controversy. While the Brady court acknowledged a similarity between civil penalties and punitive damages, it ultimately included the maximum civil penalty in calculating the amount in controversy. 243 F. Supp. 2d at 1009. Moreover, although plaintiff argues civil penalties are presumptively speculative and, therefore, akin to punitive damages, plaintiff at the same time ascribes a value of $1,000 to every alleged violation.

The Court should reject plaintiff's discovery request. Defendants have offered proof that in a given month only 11.5% of Symantec's online subscription renewal sales to United States customers are made to California residents. (Taylor Decl. at ¶ 7.)

C. Plaintiff's Reply

Where allegations of the amount in controversy are "unclear," the burden rests with removing defendant to prove the jurisdictional amount by a preponderance of evidence. See Sanchez,

102 F.3d at 403-04. Defendants have failed to offer evidence that the trial court will award a particular sum between zero and $1,000 per violation. Plaintiff's complaint does not demand relief of $1,000 per violation. Rather, plaintiff simply demands relief "not to exceed" the statutory maximum of $1,000. $1,000 is a "potential ceiling" pursuant to section 1747.08(e) and is itself discretionary.

"[I]f there is any doubt" regarding federal jurisdiction, removal must be rejected. Gaus, 980 F.2d at 566; Duncan, 76 F.3d at 1485. As a matter of federalism the Court must closely consider whether removal is proper.

The potential value of an award does not establish the amount in controversy. Conrad Associates, 994 F. Supp. at 1198 (citing Gaus, 980 F.2d at 567). Moreover, where a civil penalty contains a ceiling, it will be deemed "discretionary." Suman, 39 Cal. App. 4th at 1315, 1320-21. Defendants must offer evidence as to how the trial court would assess such a discretionary penalty. Mere numbers of downloads, without evidence to suggest that any amount other than zero will be awarded, is not enough.

Defendants improperly attempt to shift the burden of proving the amount to plaintiff. Here plaintiff has not made an express allegation. Rather, there is only the "mere possibility that the jurisdictional amount is satisfied." Sanchez, 102 F.3d at 403, 404.

Plaintiff's discovery request is withdrawn based on defendants' verified disclosures that California residents represent only 11% of its sales.

//

IV.

DISCUSSION

A. Legal Standard

A suit may be removed to federal court by the defendant if the federal court would have had original subject matter jurisdiction over that suit. 28 U.S.C. § 1441(a). Upon a motion to remand by plaintiff, defendant bears the burden of establishing proper removal and federal jurisdiction. Gaus, 980 F.2d at 566. To protect the jurisdiction of state courts, removal statutes should be strictly construed in favor of remand. Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005) citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); Duncan, 76 F.3d at 1485.

Pursuant to CAFA, district court's have "original jurisdiction" over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [the action] is a class action in which the parties satisfy, among other requirements, minimal diversity." Abrego Abrego, 443 F.3d at 680 (quoting 28 U.S.C. § 1332(d)). The statute expressly requires the aggregation of claims of individual putative class members to determine the amount in controversy. 28 U.S.C. § 1332(d)(6).

B. Removing Party's Burden of Proof

Depending on the claims in the complaint, the Ninth Circuit has identified "at least three different burdens of proof which might be placed on a removing defendant" attempting to prove federal jurisdictional requirements have been met. Guglielmino v. McKee Foods Corp., 2007 WL 2916193 at *3 (9th Cir. Oct. 9, 2007).

First, when a state court complaint "alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold," then the requirement is "presumptively satisfied" unless plaintiff can show "to a legal certainty" they cannot actually recover that amount. Id., citing Sanchez, 102 F.3d at 398. Second, when the amount in controversy is "unclear or ambiguous" on the face of the state court complaint, defendant must show by a "preponderance of the evidence" that the amount in controversy exceeds the jurisdictional amount. Id., citing Sanchez, 102 F.3d at 404. This standard also applies to state court complaints that do not specify a particular amount in controversy and are removed subject to CAFA. Id., citing Abrego Abrego, 443 F.3d at 683. Third, in the CAFA context, when a state court complaint affirmatively alleges an amount in controversy less than the jurisdictional threshold, defendants must prove "with legal certainty" that the jurisdictional threshold under CAFA is met. Id., citing Lowdermilk, 479 F.3d at 994.

Here, the state court complaint does not specify a particular amount of damages. It merely prays for 1) statutory penalties "in the amount of $1,000 for Plaintiff and each person similarly situated"; 2) attorney's fees; and, 3) an injunction barring continued violations of section 1747.08(e).

**1. Complaint Guides Burden of Proof**

In order to determine the amount in controversy alleged and thereby assign the proper burden of proof, courts look solely to the face of the complaint. Id. (noting the "nature of plaintiff's complaint" determines the burden of proof and the court "must as a threshold matter determine precisely what Guglielmino's

complaint alleged").

Here, plaintiff's prayer for relief suggests a specific amount of damages for each plaintiff, but it does not suggest the number of putative class members for which relief might be available. Therefore, the face of the complaint does not disclose the total damages.

Defendants' Notice of Removal asserts that "it is evident that plaintiffs here seek damages in excess of $5,000,000" based on the civil penalties of $1,000 for each violation alleged in the complaint. Defendants go on to "concede[]that at least 5,001 individuals within the United States have purchased food or services using a credit card between the Online Store and the Renewal Center since April 27, 2006." (Notice of Removal at ¶ 7). Accordingly, defendants would the burden to plaintiff to establish to a "legal certainty" that the jurisdictional minimum cannot be met.

In the face of a motion to remand, defendants' suggestion that the allegations in the Notice of Removal satisfy the amount in controversy fails. Defendants offer no support for their contention that the burden of proof should be determined from both the allegations in the complaint and defendants' assertions regarding those allegations. On the contrary, in determining the amount in controversy, the Court should consider the prayer for relief and "the specific total amount in controversy" alleged therein. Guglielmino, 2007 WL 2916193 at *4 (finding the prayer for relief "uncertain" where a particular number was not specified and therefore requiring the preponderance standard established by Sanchez). Like the allegation rejected by the Ninth Circuit in

Gaus, defendants' assertion that the amount in controversy exceeds $5,000,000 is merely a "'magical incantation'" and "neither overcomes the 'strong presumption' against removal jurisdiction, nor satisfies [defendants'] burden of setting forth, in the removal petition itself, the underlying facts supporting its assertion that the amount in controversy" meets the jurisdictional requirement. Gaus 980 F.2d at 567, citing Garza v. Bettcher Indus., Inc., 752 F. Supp. 753, 763 (E.D. Mich. 1990).

In fact, the preponderance standard is reserved for situations where, as here, a plaintiff "'seeks no specific amount in damages,' and a court is forced to look beyond the complaint to determine whether the suit meets the jurisdictional requirements." Lowdermilk, 479 F.3d at 998, citing Abrego Abrego, 443 F.3d at 688.

Here, the complaint does not suggest a specific set of damages beyond civil penalties of $1,000 per plaintiff. When a complaint filed in state court does not specify the amount of damages sought and is removed subject to CAFA, the burden is on the removing defendant to prove by a preponderance of the evidence that the amount in controversy requirement has been met. Abrego Abrego, 443 F.3d at 683, citing Sanchez, 102 F.3d 398 at 398; accord Guglielmino, 2007 WL 2916193 at *3. Because the complaint does not suggest the number of putative class claimants, it is the defendants' burden to show by a preponderance of the evidence at least 5,001 putative class claimants such that the amount in controversy exceeds $5,000,000.

2. Civil Penalties

Plaintiff suggests the Court should not presume civil penalties of $1,000 per class member. Rather, plaintiff argues

that a "range" of penalties from zero to $1,000 are available to class members and defendants must offer some proof of the amount likely to be awarded.

This argument is rejected. First, as defendants note, plaintiff's argument is inconsistent with plaintiff's prayer for relief appearing in the complaint. Rather than claiming a range of penalties, plaintiff demands judgment of "statutory penalties . . . in the amount of $1,000.00 for Plaintiff and each person similarly situated." (Complaint, Prayer at ¶1a.) The amount in controversy is determined by the amount demanded in good faith when the complaint is filed, rather than the sum ultimately found to be due. St. Paul Mercury Indem. Co., 303 U.S. 283, 289-290 (1938). While the statute allows for a jury to find in plaintiff's favor but award less than the statutory maximum, there is no need to speculate as to such outcomes.

Here, the amount in controversy per class member is not subject to debate. Plaintiff could have "remained silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy," thereby requiring the removing party to "show the stakes of litigation . . . given plaintiff's actual demand." Lowdermilk, 479 F.3d at 999, citing Brill, 427 F3d. at 449. Instead plaintiff chose to specify $1,000 as the recovery demanded. Since individual claims are aggregated under CAFA, plaintiff's prayer for relief is only indefinite as to the number of putative class members.

Second, plaintiff argues discretionary civil penalty awards cannot be the basis for satisfying the amount in controversy requirement. Plaintiff would have the Court construe discretionary

civil penalties the same as speculative punitive damages claims and find that the likely amount of such penalties requires evidence of the likelihood of recovery of a certain amount.

While plaintiff would require defendants to offer proof of likely recovery per plaintiff, the issue before the Court is simply the amount "in controversy" between the parties. Brill, 427 F.3d at 448. Here, contrary to the cases cited by plaintiff, that amount on a per class member basis is clearly identified in the complaint as $1,000. Such recovery is also consistent with the statutory maximum. See section 1747.08.

Plaintiff likewise would apply the reasoning in Conrad Associates and require defendants to suggest a specific likely amount of recovery. 994 F. Supp. at 1201. Unlike the present case, the Conrad Associates plaintiff simply demanded punitive damages without offering an amount in the complaint. Rejecting defendants' claim that punitive damages "could total a large sum of money" and thereby satisfy the amount in controversy, the court noted that such a claim without "*facts* that would support an award of punitive damages" was insufficient. Id.

Where a statutory maximum is specified, courts will consider the maximum statutory penalty available in the punitive damages claim to determine if the jurisdictional requirement is met. See Brady 243 F. Supp. at 1009 (finding "good reason to include the Song-Beverly Act's civil penalty of up to two times the amount of actual damages in the amount in controversy"); Chabner 225 F.3d 1046 (treble damages authorized by state statute taken into account when determining amount in controversy). While in Conrad Associates there was no reliable basis for finding that

punitive damages would sufficiently increase the amount in controversy to meet the jurisdictional requirement, there was also no specific claim for an amount of punitive damages in the complaint, the relevant statute, or offered in argument by defendants.

Here, the maximum civil penalty is identified in the statute and the same amount ($1,000.00) is requested by plaintiff in the complaint. Moreover, plaintiff does not stipulate that he will demand less than the maximum civil penalty. As a result, defendants must simply show there are at least 5,001 putative class claims in order to prove the amount in controversy exceeds $5,000,000 and therefore meets CAFA's jurisdictional requirement.

C. **Putative Class Size**

Having determined that the amount in controversy per putative class member is $1,000 and that defendants bear the burden of showing by a "preponderance" the amount in controversy is satisfied, the Court now considers defendants' proof of the size of the putative class set out in the Taylor declaration.

The preponderance standard requires defendants to offer evidence "that it is 'more likely than not' that the amount in controversy exceeds" $5,000,000. See Sanchez, 102 F.3d 398 at 404. Thus, the Court must determine whether the Taylor declaration establishes that it is "more likely than not" the putative class will exceed 5,001 members.

D. Sufficient Evidence Under CAFA

Based on plaintiff's complaint, class members must satisfy the following criteria: (1) made an online purchase from defendants during the class period; (2) made the purchase using a

prohibited credit card form; (3) downloaded the purchase without having it sent to them; and, (4) had their personal information requested or required in order to complete the transaction.

Taylor, Senior Director, Global Online Sales for Symantec, asserts that he has reviewed the relevant business records. Based on his review, "in excess of 5001 credit-card purchases" "not involving physical delivery of purchased product" occurred during the class period. (Taylor Decl. ¶ 1,5.) Specifically, Taylor notes that from July 1, 2006, through May 25, 2007, there were in excess of 3.18 million online Symantec subscription renewal purchases by U.S. customers of which less than 5% involved physical delivery and approximately 90% were credit card purchases. (Id. at ¶ 6.) To prove such renewals required customers to fill out a form covered by section 1747.08, Taylor attaches an example of an online renewal form.

In support of his motion, plaintiff argues Taylor's declaration appended to the Notice of Removal is insufficient because the absence of delivery is not declared and there is no declaration as to whether the personal information was requested in exchange for the product. Although Taylor's declaration of July 24, 2007, filed in opposition to the motion addresses these questions, in reply, plaintiff offers no response. In fact, plaintiff withdraws his discovery request based on defendants' disclosure in the Taylor declaration that California resident represent only 11.5% of the class. (Taylor Decl. ¶ 7.)

Requiring the removing party to show by a preponderance that the jurisdictional requirement has been satisfied "strikes the proper balance between a plaintiff's right to choose his forum and

a defendant's right to remove without unnecessarily expanding federal diversity jurisdiction." Sanchez, 102 F.3d 398 at 404. citing Tapscott, 77 F.3d at 1357. A court may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Singer 116 F.3d at 377, citing Gaus, 980 F.2d at 1335. It may also exercise its discretion to accept "formal judicial admissions." Id. at 376. In contrast, where defendants fail to offer "any pleading, evidence, or admission that establishes that it is more likely than not that jurisdiction lies," the Ninth Circuit has found it "well within the court's discretion to remand to state court . . . with the knowledge that later-discovered facts may prompt a second attempt at removal." Abrego Abrego, 443 F.3d at 691.

Taylor's July 24, 2007 declaration adduces enough evidence to show that the number of class claimants is sufficient to satisfy CAFA, namely, that in excess of 5001 former customers are "more likely than not" putative class claimants. This declaration coupled with plaintiff's claim for the maximum statutory civil penalty of $1,000 is sufficient to meet CAFA's amount in controversy requirement of at least $5,000,000.

//

//

//

//

//

//

//

//

V.

CONCLUSION

For the foregoing reasons, the Court finds that remand is not appropriate. Plaintiff's motion to remand is therefore denied.

IT IS SO ORDERED.

IT IS FURTHER ORDERED the Clerk shall serve a copy of this Order on counsel for all parties in this action.

DATED: December 26, 2007.

ALICEMARIE H. STOTLER
CHIEF U.S. DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

JOE ROMEO, individually, and CLIFFORD KIDD, individually, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

THE HOME DEPOT U.S.A., INC., et al.,

Defendants.

CASE NO. 06CV1505 IEG (BLM)

ORDER (1) DENYING PLAINTIFFS' MOTION TO REMAND and (2) DENYING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS

(Doc. No. 8.)

Presently before the Court is a motion to remand brought by Joe Romeo and Clifford Kidd ("plaintiffs"). (Doc. No. 8.) For the following reasons, the Court denies plaintiffs' motion to remand and denies plaintiffs' request for attorney's fees and costs.

BACKGROUND

**A. Factual History**

On or about January 9, 2006 plaintiff Kidd entered a Home Depot store within San Diego County to return an item previously purchased with a credit card. (Compl. ¶ 19.) Plaintiff Kidd

presented a Home Depot employee with a receipt of his previous purchase. (Id. ¶ 21.) A Home Depot employee printed out a credit card transaction form, which contained a preprinted space to fill in the cardholder's telephone number. (Id. ¶ 22.) "Believing that he was required to do so in order to complete the transaction, [plaintiff] . . . then wrote his telephone number on the credit card transaction form in the space provided . . . signed the form and then handed it back" to the employee. (Id. ¶ 23.) The employee entered the information into the cash register and finished the transaction. (Id. ¶ 24.)

The exact same facts took place with respect to plaintiff Romeo at another Home Depot store in San Diego County, on or about May 23, 2006. (Id. ¶¶ 13-18.)

**B. Procedural History**

On June 20, 2006, plaintiffs filed their complaint in San Diego Superior Court alleging, on behalf of themselves and others similarly situated in California, a violation of the Song-Beverly Credit Card Act. Cal. Civ. Code §§ 1747 et seq.[1] Plaintiffs seek statutory penalties; preliminary and permanent injunctions prohibiting defendants from using a credit card form with a preprinted space for the cardholder's telephone number, and ordering defendants to change their credit card forms; attorneys' fees; costs of suit; and prejudgment interest. (Compl. at Prayer for Relief.)

On July 26, 2006, defendants removed the case to this Court. (Doc. No. 1.) On August 29, 2006, plaintiffs filed a motion to remand. (Doc. No. 8.) On September 11, 2006, defendants filed their opposition. (Doc. No. 11.) On September 18, 2006 plaintiffs filed their reply. (Doc. No. 12.) On September 21, 2006, this Court ordered defendants to submit supplemental briefing and evidence on the issue of the amount in controversy in the litigation. (Doc. No. 13.) On September 28, 2006, defendants filed their supplemental memorandum along with the declaration of Kim Sentovich. (Doc Nos. 14-15.) The matter is now fully briefed, and the Court finds it appropriate for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1).

---

[1] California Civil Code § 1747.08(a)(3) (Deering 2006) provides: "no . . . corporation that accepts credit cards for the transaction of business shall . . . :

(3) Utilize, in any credit card transaction, a credit card form which contains preprinted spaces specifically designed for filling in any personal identification information of the cardholder."

The statutory definition of "personal identification information" includes the cardholder's telephone number. Id. § 1747.08(b).

**DISCUSSION**

**A. Legal Standard**

An action is removable to federal court if it might have been brought there originally. 28 U.S.C. § 1441(a). Pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. 109-2, 119 Stat. 4 (2005), district courts have jurisdiction over class actions in which the amount in controversy exceeds $5 million in the aggregate and any one member of the plaintiff class is diverse from any defendant. 28 U.S.C. § 1332(d)(2). "Under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego v. Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006). However, the CAFA removal provision "should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." S. Rep. No. 109-14, at 43 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 41. The district court should "interpret[] expansively" its power to aggregate individual class members' claims, and, where the court is in doubt whether the aggregated claims exceed $5 million, "the court should err in favor of exercising jurisdiction over the case." Id. at 42, as reprinted in 2005 U.S.C.C.A.N. at 40.

The district court must first consider whether it is "facially apparent" from the complaint that the jurisdictional amount in controversy requirement is met. Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997). When the complaint is not clear, "the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). Establishing the amount in controversy requires more than a "mere averment" that the requisite amount is at stake. Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992). Rather, defendants are expected to put forth "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Valdez v. Allstate Ins. Co., 373 F.3d 1115, 1117 (9th Cir. 2004) (internal citations omitted). The Court may consider the defendant's notice of removal and further pleadings to determine whether the defendant has properly substantiated the amount in controversy. Cohn v. Petsmart Inc., 281 F.3d 837, 840 n.1. (9th Cir. 2002).

**B. Analysis**

A violator of California Civil Code § 1747.08 "shall be subject to a civil penalty not to exceed

two hundred fifty dollars ($250) for the first violation and one thousand dollars ($1,000) for each subsequent violation[.]" § 1747.08(e). The amount of statutory damages in controversy is "facially apparent" from the complaint: plaintiffs seek the statutory maximum. (Compl. ¶¶ 30, 38 (plaintiffs and class members "are entitled to civil penalties in amounts of up to one thousand dollars ($1,000) per violation")).

What is not "facially apparent" from the complaint–and, therefore, what defendants must prove by a preponderance of the evidence–is the number of alleged violations during the year prior to the filing of the complaint.[2] To establish the number of alleged violations, defendants have included with their supplemental brief the declaration of Kim Sentovich, a regional vice-president with Home Depot. (See Sentovich Decla. in Opp. to Motion ¶ 1.) Ms. Sentovich supervises operations of one third of California's Home Depot retail stores, and is familiar with the operations of other Home Depot stores not directly under her supervision. (Id.) Under penalty of perjury, Ms. Sentovich declares, "Home Depot's California stores processes [sic] an average of 60,000 credit card refund transactions per year."[3] (Id. ¶ 3.) If plaintiffs receive the statutory maximum for all of these transactions, the amount in statutory damages in controversy would equal nearly $60 million.[4] (Supp. Opp., at 2.) Even without considering the plaintiffs' other forms of requested relief (e.g., injunction, attorneys' fees), defendants have proven plaintiffs' complaint satisfies CAFA's $5 million aggregate amount in

---

[2] Plaintiffs define the class as all persons within the year prior to the filing of the complaint who entered into credit card refund transactions in which defendants used a form with a preprinted space for the cardholder's telephone number. (Compl. ¶ 25.) Plaintiffs also define a "subclass" of all class members who actually provided their telephone number on the credit card refund form. (Id.) However, based on the language of the statute, the subclass appears to be irrelevant because the statutory violation is the utilization of a form with a preprinted space for personal identification information. See Cal. Civ. Code § 1747.08(a)(3) (omitting any requirement that the recipient of the form actually provide the personal identification information).

[3] Ms. Sentovich bases her testimony on the multiplication of the number of Home Depot stores in California (approximately two hundred) times the number of credit card refund transactions that each store processes annually (at least three hundred).

[4] The total amount of statutory damages is slightly less than $60 million because plaintiffs would receive only $250 for the first violation.

controversy.[5]

Plaintiffs cannot avoid satisfaction of the amount in controversy by alleging it would be "far from reasonable to infer that a court or jury" would award the statutory maximum. (Reply, at 2-3.) Where plaintiffs pray for statutory penalties "up to the statutory maximum of $1,000 per violation, this Court would remand for lack of subject matter jurisdiction only if it 'appear[ed] to a legal certainty that the claim is really for less than the jurisdictional amount.'" Crum v. Circus Circus Enters., 231 F.3d 1129, 1131 (9th Cir. 2000) (quoting Budget Rent-A-Car, Inc. v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir. 1997) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938))). While plaintiffs may not eventually receive the statutory maximum for each violation, plaintiffs have not established "to a legal certainty" that the aggregate amount in controversy-including statutory damages, attorneys' fees and value of the injunction-would fall below $5 million.

2. Attorney's Fees and Costs

Plaintiff requests attorney's fees and costs as provided for by law. See 28 U.S.C. § 1447 (c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal"). Having denied plaintiffs' motion to remand, the Court obviously believes defendants had "an objectively reasonable basis" to remove this case. See Martin v. Franklin Capital Corp., 546 U.S. 132, 126 S. Ct. 704, 711 (2005); Patel v. Del Taco, Inc., 446 F.3d 996, 999 (9th Cir. 2006) (denying attorney's fees when the removing party had an "objectively reasonable basis").

CONCLUSION

For the foregoing reasons, the Court **DENIES** plaintiffs' motion to remand and **DENIES** plaintiffs' request for attorney's fees.

**IT IS SO ORDERED.**

**DATED: October 30, 2006**

Irma E. Gonzalez
IRMA E. GONZALEZ, Chief Judge
United States District Court

[5] Because the Court bases its denial of plaintiffs' motion to remand on the Sentovich declaration, the Court denies plaintiffs' request for "immediate discovery" on defendants' representations in their Notice of Removal.

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 153482 - TC**
*** * C O P Y * ***
**July 29, 2008**
**15:46:59**

**Civ Fil Non-Pris**
USAO #.: 08CV1372
Judge..: JANIS L. SAMMARTINO
Amount.: $350.00 CK
Check#.: BC70590

**Total-> $350.00**

FROM: NANCY FOGELSTROM
VS.
VERFAST

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

FILED
08 JUL 29 PM 3:41
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Nancy Fogelstrom

**DEFENDANTS**
Everfast, Inc.

'08 CV 1372 JLS POR

**(b)** County of Residence of First Listed Plaintiff: San Diego, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Chester County, PA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
See attachment

Attorneys (If Known)
See attachment

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☒ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☐ 1 Original Proceeding ☒ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. §§ 1332(d), 1441, et. seq. and 1446, et. seq.
Brief description of cause: Complaint for civil penalties, etc.

**VII. REQUESTED IN COMPLAINT:** ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 5,000,000.00 +
CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE 07/29/2008
SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # 153487 AMOUNT $350 APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

TAC 7/29/08

**(C) Attorney's for Plaintiff (Firm Name, Address, and Telephone Number)**

James R. Patterson (SBN 211102)
Cary Kinkead (SBN 216545)
Harrison Patterson & O'Connor LLP
402 West Broadway, Suite 1905
San Diego, CA 92101
619-756-6990

**Attorney's for Defendants (Firm Name, Address, and Telephone Number)**

John J. Powers (SBN 145623)
Rodney M. Hudson (SBN 189363)
Drinker Biddle & Reath LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105
415-591-7500

Siobhan A. Cullen (SBN 254734)
Drinker Biddle & Reath LLP
333 South Grand Avenue, Suite 1700
Los Angeles, CA 90071
213-253-2300